<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SCHNEIDER NATIONAL CARRIERS, INC. | : : : | |
| Plaintiff, | : : | Civ. No. 04-5468 (GEB) |
| v. | : : : | **MEMORANDUM OPINION** |
| NEWPORT DISTRIBUTION SERVICES, INC., ULTIMATE TRANSPORTATION CO., INC., TRANSPEED DELIVERY CO., RAPID DELIVERY SERVICE, INC., ATLANTIC MUTUAL INSURANCE COMPANY, and CENTENNIAL INSURANCE COMPANY | : : : : : : : | |
| Defendants. | : : | |

**BROWN, Chief Judge**

This matter comes before the Court upon defendants Atlantic Mutual Insurance Company ("Atlantic Mutual") and Centennial Insurance Company's ("Centennial"), collectively ("Defendants"), motion for summary judgment, and upon plaintiff Schneider National Carriers, Inc.'s, ("Schneider") cross-motion for summary judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This matter has been transferred to the undersigned, and the Court has read and considered all the parties' submissions, and has decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78. For the reasons set forth below, the Court will grant Schneider's motion for summary judgment and deny Defendants' motion for summary judgment.

1

**I.      BACKGROUND**

This action arises out of a cargo loss that occurred on or around December 5, 2000. (Schneider's Opposition to Defendants' SJ Motion at 1).  Defendants allege that Schneider learned of the loss on December 15, 2000.  (Defendants' SJ Motion at 12).  Pursuant to the Agreement with Schneider, defendant Ultimate Transportation Services, Inc., ("Ultimate") undertook the responsibility to transport a shipment of shirts to Sears Logistics in Wilkes Barre, Pennsylvania.  (Schneider's Opposition to Defendants' SJ Motion at 1).  Ultimate picked up the cargo in Little Ferry, New Jersey on December 1, 2001.  However, Ultimate never delivered the cargo.  Consequently, Schneider paid Sears Logistics $150,000 for the loss.  *Id.*

Ultimate's insurers at that time were Defendants, Atlantic Mutual and Centennial.  The insurance policy ("Policy") Defendants issued to Ultimate included an endorsement for Motor Truck Cargo Carrier's Liability.  *Id.*  Pursuant to the Policy, Defendants were obligated to pay for "losses to covered property."  *See* Policy, attached as Ex. D to Schneider's Opposition to Defendants' SJ Motion.  Covered losses were defined as "accidental loss or damage." *Id.* Covered property was defined as "property of others in due course of transit under [Ultimate's] tariff, bill of lading, shipping receipt, or contract of carriage issued by [Ultimate]." *Id.*  The Policy also contained several exclusions to coverage, including the Dishonest Acts, Prompt Notice and the Limitation of Action provisions.  The Dishonest Acts provision provided that a loss resulting from a dishonest act was not covered under the Policy.  *Id.*  The Prompt Notice provision provided that in the event of "loss" the insured was obligated to "give [Defendants] a prompt notice of the 'loss,'" including a "description of how, when and where the 'loss' occurred."  The notice was to be given "as soon as possible." *Id.*  The Limitation of Action

provision provided that a party can bring an action against Defendants within two years after [that party first obtains knowledge] of the 'loss.'" *Id.*

On or around October 17, 2001, Bollinger, Inc. ("Bollinger"), Ultimate's insurance agent, notified Defendants of the loss. (Schneider's Opposition to Defendants' SJ Motion at 2). On October 30, 2001, Defendants sent a reservation of rights letter to Ultimate, reserving their rights and defenses under the Policy and requesting additional information from Ultimate regarding the loss. *Id.* On November 3, 2004, Schneider commenced the present action against Ultimate, Atlantic Mutual, Centennial and other defendants, seeking compensation for the cargo loss. On March 23, 2006, default judgment was entered against defendants Ultimate, Newport Distribution Services, Inc., Transpeed Delivery Co., and Rapid Delivery Service, Inc., for $157, 823.58, which included the $150,000 cargo loss and other losses. *Id.* Pursuant to the Policy, Defendants agreed to compensate Schneider for the "other losses" totaling $7,823.58, but declined to pay $150,000 for the cargo loss. *Id*.

In lieu of filing a separate declaratory judgment action, the Court has permitted the parties to address Schneider's claim for the cargo loss against Defendants through dispositive motions. Briefing on the matter now complete, the Court will address the pending motions.

## II.     DISCUSSION

### A.     Standard of Review

In deciding a motion for summary judgment, a court should grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Whether Schneider May Assert a Direct Cause of Action Against Defendants

#### 1. The Parties' Arguments

Schneider argues that under New Jersey law, an injured party may assert a direct cause of action against the insurer once a judgment against the insured has been entered. (Schneider's Brief in Support of SJ Motion at 5). Schneider argues that in the present action, the Court entered a judgment against Ultimate on March 26, 2006, for $157, 823.58. Therefore, Schneider may assert a direct cause of action against Defendants for the $150,000 that they declined to pay. *Id*. at 6.

Defendants argue that pursuant to the Policy, Schneider is not an insured, additional insured or loss payee. (Defendants' Brief in Support of SJ Motion at 8). They contend that under New Jersey law, Schneider may not assert a direct cause of action against them pursuant to a Policy to which he is a stranger. *Id*. at 7.

4

    **2.**     **Applicable Law**

Pursuant to the traditional common law rule, an injured party may not assert a direct cause of action against the insurer of the person who caused the injury. *See Flint Frozen Foods, Inc. v. Firemen's Ins. Co.*, 8 N.J. 606, 611 (1952) ("After a loss has occurred a person may not adopt a policy to which he is a stranger and thereby increase the liability of the insurer"); *see generally*, 22-142 APPLEMAN ON INSURANCE § 142.1 (2nd ed. 2007). However, states have created numerous ways in which an injured party can bypass the traditional rule. 22-142 APPLEMAN ON INSURANCE § 142.1. For example, in New Jersey an injured party may assert a direct cause of action against an insurer after it obtains a judgment against the insured that determines the insured's liability. *In re Hub Recycling, Inc.*, 106 B.R. 372, 376 (D.N.J. 1989) (citing *Manukas v. The American Ins. Co.*, 98 N.J. Super. 522, 524 (App. Div. 1968)). This is true even if the insurance policy at issue does not permit such a lawsuit. *Id.* ("Even if the policy does not permit the bringing of suit, the policy cannot preclude such a suit in the face of New Jersey law giving a claimant a right to bring a direct action after judgment has been entered").

    **3.**     **Under New Jersey Law Schneider May Assert a Direct Cause of Action Against Defendants**

On March 26, 2006, the Court awarded Schneider a judgment for $157, 823.58 against numerous defendants, including Ultimate. Defendants have only paid Schneider $7, 823.58 of that sum. Pursuant to New Jersey law, Schneider may assert a direct cause of action against Defendants to recover the remainder.

### C. Whether Schneider Has Incurred a Covered Loss

#### 1. The Parties' Arguments

Defendants argue that Schneider has not demonstrated that it incurred a covered cause of loss–i.e., a loss that was accidental and not the result of a dishonest act. (Defendants' Reply in Opposition to Schneider's SJ Motion and in Further Support of Defendants' SJ Motion at 2-4). They contend that Schneider bears the burden establishing that the factual circumstances of the loss give rise to coverage. *Id*. at 3. According to Defendants, the only evidence proffered regarding the cause of loss was the report from the investigation conducted by Schneider's representative. (Defendants' Brief in Support of SJ Motion at 13). Defendants argue that the report implies the cargo was stolen because it states: "We have received a report of a possible theft that was recently reported and have started our investigation process." *Id.*

Defendants also argue that Schneider has not provided evidence establishing that the cargo was "covered property"–i.e., in the course of transit under Ultimate's tariff, bill of lading, shipping receipt or contract of carriage. *Id*. at 3-4. According to Defendants, no bill of lading or other shipping receipt of the insured has ever been located or disclosed. *Id*. at 4.

Schneider argues that the loss was accidental, and thus covered. (Schneider's Brief in Support of SJ Motion at 3). Schneider argues that Defendants bear the burden of establishing that the Dishonest Acts exclusion applies to bar its claims. (Schneider's Reply to Defendants' Brief in Opposition to Schneider's SJ Motion at 3-4).

Schneider also argues that it has provided evidence to establish that the cargo was "covered property." *Id.* at 2. Specifically, Schneider has proffered the Contract it had with Ultimate to transport the cargo, the results of an investigation by its representative that revealed

6

that the cargo was released to Ultimate and a letter written by INS Insurance, Inc., to Ultimate, stating that a CSX rail outgate ticket showed that Ultimate's driver picked up the cargo. *Id*. at 3.

### 2. Applicable Law

It is well established that under New Jersey state law, "[i]nsurance contracts are to be liberally construed in favor of the policy holder and strictly construed against the insurer in order to afford the protection which the insured sought in applying for the insurance." *Reese Cadillac Corp. v. Glens Falls Ins. Co.*, 59 N.J. Super. 118, 126 (App. Div. 1960). A court should construe an insurance policy to protect the insured to the full extent that a reasonable interpretation of the policy will permit. *Id.* Any ambiguity in the policy should be resolved in favor of coverage. *Id.*

While the injured party generally bears the burden of establishing that the policy covers its claim, the insurer bears the burden of establishing that an exclusion in the policy applies to bar the claim. *Cobra Products, Inc. v. Federal Ins. Co.*, 317 N.J. Super. 392, 401 (App. Div. 1998).

### 3. The Policy Covers Schneider's Loss

The Court concludes that Schneider has established that it incurred a covered loss. Defendants have not raised a genuine issue of fact that would preclude a summary judgment. Pursuant to the Policy, Defendants were obligated to pay for "accidental loss or damage" to the "property of others in due course of transit under [Ultimate's] tariff, bill of lading, shipping receipt, or contract of carriage issued by [Ultimate]." First, it is undisputed that the lost cargo was another's property. Second, Schneider has established that the cargo was "covered property" by proffering evidence that Ultimate undertook the responsibility to deliver the cargo and that

Ultimate's driver picked up the cargo. Third, the Court will presume that the cargo was lost accidentally, absent evidence to the contrary. This presumption is warranted by New Jersey's policy of construing an insurance policy in favor of the policy holder. Defendants have not met their burden of establishing a genuine issue that the Dishonest Acts provision applies. Defendants' only evidence on this issue consists of a hearsay statement by Schneider's representative that some unidentified entity reported that the cargo could have been stolen. The investigation report itself did not conclude that the cargo was stolen. Therefore, the Court concludes that the Policy covers the cargo's cause of loss.

        D.        **Whether the Policy's Prompt Notice Provision Bars Schneider's Claims**

Defendants argue that Schneider did not comply with the Policy's Prompt Notice provision. They argue that Schneider did not inform them of the loss "as soon as possible." (Defendants' SJ Motion at 11-12). According to Defendants, Schneider knew about the loss on December 15, 2000, but never informed Defendants. Rather, Bollinger notified Defendants on October 17, 2001, ten months after Schneider found out about the loss. *Id*. at 12. Defendants also argue that they suffered substantial prejudice as a result of the delay in notice. (Defendants' Reply in Opposition to Schneider's SJ Motion and in Further Support of Defendants' SJ Motion at 12). Specifically, Defendants argue that Ultimate's failure to provide them with information regarding the loss deprived them of the opportunity to find out the cause of the loss. *Id.* at 12-14. Defendants argue that they did not have an affirmative duty to investigate the loss and cite *S.L. Indus. Inc. v. American Motorist Ins. Co.*, 128 N.J. 188, 215 (1992), in support of their proposition. *Id*. at 13.

8

Schneider argues that Defendants have not met their burden of establishing that the Prompt Notice provision bars its claims because they have not established that they incurred substantial prejudice as a result of the delay. (Schneider's Opposition to Defendants' SJ Motion at 11). Schneider argues that the delay did not deprive Defendants of the opportunity to find out the cause of the loss because they had three years between the time they were noticed and the commencement of the present action in which to conduct an investigation or obtain information from Ultimate. *Id*. at 14. Schneider also argues that although *S.L. Industries* generally held that the insured has a duty to forward information regarding the loss to its insurer, other courts have recognized a distinction in cases where the insurer is seeking to disclaim coverage based on a policy exclusion. (Schneider's Reply in Further Support of Schneider's SJ Motion at 5). In such cases, the insurer bears the burden of investigating the claim. *Id.*

### 2. Applicable Law

An insurer asserting a prompt notice provision in its policy as a defense to liability bears the burden of proving that the provision was breached and that it incurred "appreciable prejudice" as a result. *Cooper v. Geico Ins. Co.*, 51 N.J. 86, 94 (1968). Courts consider two main factors in determining whether an insurer incurred "appreciable prejudice": The first factor is whether the lack of timely notice caused the insurer to irretrievably lose substantial rights. *Morales v. National Grange Mut. Ins. Co.*, 176 N.J. Super. 347, 355 (1980). The *Morales* court explained that the insurer,

> must establish more than the mere fact that it cannot employ its
> normal procedures in investigating and evaluating the claim. Rather,

9

> it must show that substantial rights pertaining to a defense against the claim have been <u>irretrievably lost</u>. I have underscored the phrase "irretrievably lost" because in a case in which notice has been given after the entry of judgment, it cannot reasonably be argued that the carrier has not been prejudiced. Indeed, the carrier has lost the opportunity to make a prompt investigation of the accident, to depose parties and others, to appear at trial and cross-examine witnesses, and to present evidence on its insured's behalf. The extent to which such rights have been irretrievably destroyed, however, is quite another question. It might well be that witnesses are presently available and that the circumstances surrounding the accident can be reconstructed. [*Id*. at 355-56 (citation omitted).]

The second factor is the likelihood that the insurer would have been successful in defending against the injured party's claim if it had received timely notice. *Id*. at 356.

The "appreciable prejudice" requirement is grounded on a fundamental principle that,

> No condition of timely notice will be given a greater scope than required to fulfill its purpose. Simply put, the scope of the condition precedent which will relieve an insurer of its obligations under an insurance contract, is only as broad as its purpose: to protect the ability of the insurer to defend by preserving its ability fully to investigate the accident. . . . If, under the circumstances of a particular case, the purpose behind the requirement has been met, the insurer will not be relieved of its obligations. If, on the other hand, the purpose of protecting the insurer's ability to defend has been frustrated, the insurer has no duty under the contract. This equitable approach to the interpretation of notice requirements in insurance contracts has the advantages of providing coverage whenever in the reasonable expectations of the parties it should exist and of protecting the insurer whenever failure strictly to comply with a condition has resulted in material prejudice. [*Gazis v. Miller*, 378 N.J. Super. 59, 66-67 (App. Div. 2005) (quoting *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 303 N.C. 387, 774-75 (1981)).]

In *Gazis*, the plaintiff was struck by a motor vehicle driven by the insured on January 9, 2001. *Id*. at 60. The insurer received notice of the claim on June 21, 2001. *Id*. at 62. The insurer denied the claim based on the prompt notice provision in its policy. *Id*. The plaintiff

10

commenced a lawsuit six months after the insurer issued the denial. *Id*. The insurer moved for dismissal based on breach of the policy's prompt notice provision. It argued that it was prejudiced by the late notice because if it had received earlier notice it would have conducted a more thorough investigation of the accident and sought an early settlement. *Id*. at 62-63. The court held that the insurer had not incurred "appreciable prejudice" because it could have conducted the thorough investigation and settlement discussion in the six months between the time it received notice and the commencement of suit. *Id*. at 68.

### 3.     The Prompt Notice Provision Does not Bar Schneider's Claims

Defendants have interpreted *S.L. Industries* too broadly: *S.L. industries* held that an insurer is not responsible for conducting an investigation to determine whether its policy covers the injured party's claim. 128 N.J. at 199-200. This holding is consistent with the general rule that the injured party, not the insurer, bears the burden of establishing that its claim is covered. This case is distinguishable from *S.L. Industries* because here Defendants are trying to establish that an exclusion applies. In this case, the general rule requires that Defendants bear the burden of establishing that the Prompt Notice provision applies, and they may have to conduct an investigation to meet their burden. The *Morales* and *Gazis* decisions contemplated that an insurer may have to conduct an investigation when these held that a prompt-notice provision should be enforced to absolve the insurer of liability only when the insurer's right to investigate the claim has been irretrievably lost. *Morales*, 176 N.J. Super. at 355; *Gazis*, 378 N.J. Super. at 68.

Defendants have not established a genuine issue that they incurred "appreciable

11

prejudice" as a result of the delay in notice. Specifically, they have not established a genuine issue with respect to their claim that the late notice caused them to irretrievably lose their right to determine the cause of the loss. Similarly to *Gazis*, despite the claimed late notice, Defendants had three years between the time they received notice and the commencement of the present action in which to conduct an investigation of the loss. However, they failed to conduct any investigation. Because Defendants have not established a genuine issue with respect to the first factor of the "appreciable-prejudice" standard, the Court will not apply the Prompt Notice provision to bar Schneider's claims.

### E.  Whether the Policy's Limitation of Action Provision Bars Schneider's Claims

#### 1.  The Parties' Arguments

Defendants argue that Schneider did not comply with the Limitation of Action provision because Schneider allegedly learned about the loss on December 5, 2000, but waited until November 30, 2004, to file the present action. (Defendants' SJ Motion at 10).

Schneider argues that pursuant to New Jersey law, a policy's limitation of action period should be tolled from the time notice of the loss is given to the insurer to the time the insurer formerly denies liability. (Schneider's Opposition to Defendants' SJ Motion at 9). Schneider argues that Defendants received notice of the claim on October 17, 2001, but never formerly denied liability. *Id*. at 10. Rather, Defendants sent an letter to Ultimate on October 30, 2001, reserving their rights and defenses under the Policy and requesting additional information from Ultimate about the loss. *Id*.

**2.     Applicable Law**

In interpreting suit limitation provisions in insurance contracts, New Jersey courts have held that these should not be read to literally mean that the period of limitation runs from the date of loss to the commencement of suit. *Azze v. Hanover Ins. Co.,* 336 N.J. Super. 630, 636-37 (App. Div. 2001). Rather:

> [T]he fair resolution . . . is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined. In this manner, the literal language of the limitation is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit. [*Id*. at 637.]

In *Azze*, the plaintiffs submitted a claim to their homeowners' insurer for coverage of structural damage and loss to their personal property. *Id*. at 663. In response, the insurer issued a letter denying coverage for the loss to personal property and reserving its rights and defenses under the policy. *Id*. at 634. The insurer concluded the letter by stating: "If you have any questions or further information which may become pertinent, please contact us so that we may consider it." *Id.* The court held that the alleged denial letter did not constitute a "formal denial" that is required to stop the tolling of the suit limitation period in the insurer's policy. *Id*. at 641. The Court held that the letter was ambiguous because the request for further information could support a rational conclusion that the denial was not final, but rather a preliminary finding open to revision. *Id*. at 641-42.

### 3. The Limitation of Action Provision Does not Bar Schneider's Claims

Although Defendants received notice of the loss on October 17, 2001, they never formerly denied liability. Instead, Defendants sent a reservation of rights letter that requested further information. Defendants' letter did not meet the strict standard for a formal denial explained in *Azze*. Therefore, the Policy's two-year limitation period was tolled from the time Atlantic Mutual received notice of the loss to the time Schneider commenced the present action. Accordingly, the Limitation of Action provision does not bar Schneider's claims.

### III. CONCLUSION

For these reasons Schneider's motion for summary judgment is granted and Defendants' motion for summary judgment is denied. An appropriate form of order is filed herewith.

Dated: August 29, 2007

                                                    s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.